Kathleen NEYLAN and Kevin Neylan, d/b/a Neylan Law Office, Appellees,

v.

Clifton MOSER and Hilda Moser, Carlys Moser and Laura Moser, Appellants.

No. 85–1639.

Supreme Court of Iowa.

Feb. 18, 1987.

James P. Hayes and Margaret T. Lainson of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellants.

Patrick M. Roby and Douglas R. Oelschlaeger of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, WOLLE, LAVORATO, and NEUMAN, JJ.

WOLLE, Justice.

We label this appeal *Moser* IV because the underlying equity action involving purchase of farm real estate has been before us on three previous occasions. *See Moser v. Thorp Sales Corp.*, 256 N.W.2d 900 (Iowa 1977) (*Moser* I); *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881 (Iowa 1981) (*Moser* II); *Moser v. Thorp Sales Corp.*, 334 N.W.2d 715 (Iowa 1983) (*Moser* III). This appeal concerns the separate equity action filed by attorneys Kathleen and Kevin Neylan (Neylans) against members of the Moser family whom they represented in those earlier proceedings. Neylans brought the action to enforce their contingent fee agreement and impose an attorney fee lien on the real estate. Responding to the Neylans' claims, Mosers first denied that attorney fees were owed and subsequently requested permission to file a counterclaim alleging that the Neylans had committed malpractice through negligent handling of two of the Mosers' lawsuit claims. The district court determined that the proposed malpractice counterclaim would be barred by the applicable statute of limitations and therefore refused to allow the Mosers' motion to amend to assert the counterclaim. We reverse and remand.

## I. *Background Facts.*

The parties quarrel over the law but not the facts pertinent to this appeal. No evidentiary hearing preceded the rulings here appealed. We sketch the factual background from the pleadings.

Mosers first employed the Neylans in 1972 to represent them in securing ownership to a farm they had purchased at auction in 1971. During the extended course of that litigation the Neylans filed numerous pleadings, tried the equity case both initially and following two subsequent remands, and presented all three appeals to this court. Neylans base their claim for attorney fees on a contingent fee agreement that was initially oral and later reduced to writing.

Neylans contend in this action that they first requested payment of attorney fees on April 10, 1978 when they secured possession of the farm for the Mosers following remand of *Moser* I. With issues remaining to be resolved on further appeal, Mosers and Neylans allegedly agreed to share the yearly income from the farm until final disposition of the litigation. When the underlying case had finally been put to rest following the remand of *Moser* III, however, Neylans commenced this equity action contending that Mosers had not paid what was owed under the contingent fee agreement.

Neylans filed this equity action on May 25, 1984, and Mosers initially answered on June 14, 1984, denying that fees were due and asserting several affirmative defenses. Almost seven months later, on January 7, 1985, Mosers sought permission to assert their two-count counterclaim for legal malpractice. They alleged that the Neylans had negligently failed to present sufficient evidence of damages caused by erosion of the farm land and deterioration of the buildings while they were out of possession of the farm (*see Moser* II, 312 N.W.2d at 899), and failed to file the affidavit for attorney fees required by Iowa Code section 625.24 (1981) (*see Moser v. Thorp Sales Corp.*, 334 N.W.2d at 718–19). The proposed counterclaim was effectively disallowed when the district court sustained a special appearance filed by the Neylans and then denied the Mosers' motion to amend. The court held that the five-year limitation of Iowa Code section 614.1(4) was applicable to the counterclaim, then determined that the cause of action accrued when "Mosers discovered or should have discovered their alleged injury" more than five years before the motion to amend was filed.

We first address the Neylans' motion to dismiss based on mootness, then the district court's application of the statute of limitations, and finally the denial of the Mosers' motion to amend.

## II. *Neylans' Motion to Dismiss Appeal.*

■ Neylans have moved to dismiss this appeal, asserting it is now moot because

their claim for attorney fees has been tried to the court and resulted in a judgment which Mosers have paid. They contend:

A decision in favor of Mosers would result in their counterclaim being remanded to the district court as a counterclaim to an action which has been decided.

The only authority they cite, however, is *State v. Wilson*, 234 N.W.2d 140 (Iowa 1975), which is inapposite. In *Wilson*, we dismissed as moot a former prisoner's request to have work release privileges reinstated. *Id.* at 141. That case presented no justiciable controversy because the prisoner's release from jail had made the issue academic. Here, in contrast, judgment on the Neylans' cause of action does not necessarily make the Mosers' counterclaim academic. Claims or counterclaims may be disposed of by partial summary judgment or even tried separately, resulting in separate judgments in the same action. *See Mason City Production Credit Association v. Van Duzer*, 376 N.W.2d 882, 887 (Iowa 1985) (suggesting that a summary judgment court should stay execution on a partial summary judgment when counterclaim issues remain to be tried); Iowa R.Civ.P. 186 (court may order separate trial of any claim, counterclaim or cross-claim).

■ It is true that a party may waive its right to appeal by accepting the benefits of a decree. A party who accepts material and substantial benefits under a judgment or decree may not ordinarily challenge the provisions under which benefits are awarded. *Johnson v. Johnson*, 301 N.W.2d 750, 752 (Iowa 1981); *In re Marriage of Abild*, 243 N.W.2d 541, 542–43 (Iowa 1976). The party relying on such an appellate waiver doctrine, however, has the burden to demonstrate a voluntary and knowing waiver. *Johnson*, 301 N.W.2d at 753. While Neylans have shown that a judgment was entered in their favor and paid, the record is devoid of evidence of the surrounding circumstances and does not show a voluntary and knowing waiver by Mosers. We have jurisdiction to decide this appeal.

### III. *Neylans' Statute of Limitations Defense.*

■ The core issue in this appeal is whether the Mosers' malpractice counterclaim was barred by Iowa Code section 614.1(4), the statute of limitations relied upon by the Neylans. (We note parenthetically that Neylans have not contended that the shorter two-year statute of limitations of Iowa Code section 614.1(2) would here apply, so we do not consider that separate statutory limit.) Although the district court decided the limitations issue before us by sustaining the Neylans' special appearance, we treat the ruling as the granting of a motion to dismiss because it is the substance of a motion, not its label, that discloses its character. *See State v. Cullen*, 357 N.W.2d 24, 27 (Iowa 1984). Lack of a court's subject matter or in personam jurisdiction may properly be raised by special appearance (Iowa R.Civ.P. 66), but the running of a statute of limitations under Iowa Code chapter 614 does not deprive the court of jurisdiction. The bar of the statute of limitations is properly presented by a motion to dismiss when the necessary facts appear on the face of the pleadings, otherwise by affirmative defense and motion for summary judgment. *See Pride v. Peterson*, 173 N.W.2d 549, 554 (Iowa 1970); I A. Vestal and P. Willson, *Iowa Practice* § 15:13 (1983 rev. ed.). The parties and the district court treated the special appearance as a motion to dismiss, and we do likewise in reaching the substantive limitations question.

■ We view the pleaded facts in the light most favorable to the Mosers, the parties resisting the Neylans' reliance on section 614.1(4). The burden was on Neylans to establish their limitations defense but on the Mosers to demonstrate their reliance on any exception to the ordinary limitations period. *See Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 157 (Iowa 1984); *Franzen v. Deere and Co.*, 334 N.W.2d 730, 732 (Iowa 1983).

This case poses very specific questions: When did each of the Mosers' two pleaded legal malpractice causes of action accrue?

In *Millwright v. Romer*, 322 N.W.2d 30 (Iowa 1982), we explained that when a claimant in a legal malpractice action relies on the so-called "discovery rule" the cause of action accrues when the harm or damage was ascertainable or discoverable "by the use of the means of information within [the claimant's] reach, with the vigilance which the law requires of him." *Id.* at 32–33. Mosers here rely on the discovery rule, and we therefore must apply the principles articulated in *Millwright* to the pleaded facts in this case.

A. *The alleged failure to present evidence of erosion.* Mosers contend in one count of their counterclaim that Neylans negligently failed to present adequate evidence to support Mosers' claim of damages caused by erosion of the land and deterioration of the buildings on the farm. The district court measured the five-year period for bringing that cause of action from August 1, 1979 when the trial court entered judgment denying that specific claim for damages. It wrote that "Mosers discovered or should have discovered their alleged injury as of that date...." Mosers, on the other hand, argue that the cause of action did not accrue until November 25, 1981 when we filed *Moser* II affirming that decision of the district court. Mosers argue they had a right to rely upon the skill and knowledge of the Neylans who had advised them to appeal that adverse ruling and handled the appeal for them.

We recognize that some courts, like the district court here, have concluded that the date of a final district court ruling should mark the time when a legal malpractice cause of action accrues, because the claimant is then formally advised of an adverse ruling and resulting damage. *See, e.g., Farner v. Fireman's Fund Insurance Co.,* 748 F.2d 551, 555 (10th Cir.1984) (plaintiff "suffered an injury directly attributable" to attorney's negligence when state court ruled); *Hunt v. Bittman,* 482 F.Supp. 1017, 1022 (D.D.C.1980), *aff'd,* 652 F.2d 196 (D.C.Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981) (criminal defendant's cause of action against attorney for malpractice accrued when he was

sentenced and incarcerated after pleading guilty); *Bell v. Hummel and Pappas,* 136 Cal.App.3d 1009, 1017, 186 Cal.Rptr. 688, 694 (1982) (damage occurred when court denied appellant right to join wife's complaint as co-plaintiff); *Don Reid Ford, Inc. v. Feldman,* 421 So.2d 184, 185 (Fla.Dist. Ct.App.1982) (damage occurred when judgment was entered against the insured because of the alleged malpractice).

Other courts, however, have stated that the date of injury "coincides with the last possible date when the attorney's negligence becomes irreversible." *See* R. Mallen and V. Levit, *Legal Malpractice* § 390, at 457 (1981). In *Woodruff v. Tomlin,* 511 F.2d 1019 (6th Cir.1975), the court held that "judgment did not become final until the court of appeals decided the appeal and the time to appeal to the [state] supreme court ... had expired." *Id.* at 1021. *See also AMFAC Distribution Corp. v. Miller,* 138 Ariz. 155, 156–59, 673 P.2d 795, 796–99 (Ct.App.1983); *Bonanno v. Potthoff,* 527 F.Supp. 561, 565 (N.D.Ill.1981).

■ We adopt the latter approach, for it comports with our view that a client has a "right to rely upon the superior skill and knowledge of his attorney." *Millwright,* 322 N.W.2d at 34. As the court in *AMFAC* reasoned,

[U]nder our rule, a client will not have to challenge and question every decision made by his attorney or routinely double-check his attorney's conduct during litigation.... Thus, the client will have peace of mind to allow the legal process to work fully and finally in hopes that his position will ultimately be vindicated and will not be forced to disrupt his relationship with his lawyer to preserve what he thinks may be a valid malpractice claim.

*AMFAC,* 138 Ariz. at 159, 673 P.2d at 799.

■ Mosers' counterclaim alleging that Neylans inadequately presented evidence of injury and economic waste accrued no earlier than November 25, 1981 when our court in *Moser* II affirmed the trial court decision concerning those factual issues in the underlying lawsuit.

B. *The failure to file an attorney fee affidavit.* The district court also adopted Neylans' theory that Iowa Code section 614.1(4) barred Mosers' malpractice counterclaim based on the Neylans' failure to file an attorney fee affidavit to support Mosers' attorney fee demand in the underlying lawsuit. Neylans contended that the cause of action accrued on July 29, 1977 when our court decided in *Moser* I that Mosers had a valid and enforceable contract to buy the farm (*Moser* I, 256 N.W.2d at 907) yet no attorney fees were awarded as a part of the court costs assessed to the defendants. *Id.* at 913.

Here again, as with the other malpractice count, Neylans continued to represent Mosers for several years after *Moser* I was decided, and it was not until our decision in *Moser* III (334 N.W.2d at 718–19) that we finally put to rest the Mosers' claim for attorney fees. The Mosers' cause of action for malpractice in that connection did not accrue until June 15, 1983, the date when *Moser* III was decided.

The trial court therefore erred in deciding that the Mosers' legal malpractice counterclaim was barred by the statute of limitations relied upon by Neylans.

## IV. *Mosers' Motion to Amend.*

■ The final question we must answer is whether the district court abused its discretion in refusing to permit Mosers' motion to amend to assert the counterclaim nearly seven months after their original answer was filed. We conclude the denial of the motion constituted an abuse of discretion.

Iowa Rule of Civil Procedure 88 provides:

A party may amend a pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial calendar, the party may so amend it at any time within twenty days after it is served. Otherwise, a party may amend a pleading only by leave of court or by written consent of the adverse party. *Leave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires.*

(Emphasis added). We review on abuse of discretion, but we are ever mindful of the last sentence of the rule and have frequently said that "allowance of amendments should be the rule and denial the exception." *Chao v. City of Waterloo,* 346 N.W.2d 822, 825 (Iowa 1984); *Johnston v. Percy Construction, Inc.,* 258 N.W.2d 366, 370–71 (Iowa 1977). Our real inquiry in reviewing a trial court's ruling on a motion to amend is whether the ruling lacks a solid legal basis. *Id.* at 371.

Here, it is apparent from the trial court's written ruling that it denied permission to amend primarily because it believed the five-year statute of limitations barred the proposed counterclaim. Thus did the district court write:

If the amendment is permitted, the amendment may relate back to the date of the original pleading which in this case would be within the five year period required by the statute of limitations [Iowa R.Civ.P. 89]. The statutes outlaw the cause of action. Therefore, the difficult question before this court is whether to now permit Mosers' leave to amend and thereby use the rule to circumvent the statute of limitations as established by the legislature.

Of course, our determination that the Mosers' claim was not time barred eliminates the concern that the statute of limitations would be circumvented.

The district court was also troubled, as are we, by the Mosers' seven-month delay in asserting their counterclaim after initially filing their answer, but the record does not support the district court's finding that Mosers were "negligent" in that regard. Nothing in the record suggests that the case had been made ready for trial or that trial had even been scheduled when the motion to amend was filed. On balance, we conclude that the district court's denial of 'Mosers' motion to amend was without a sound legal basis and must be reversed.

We remand this case to the district court with directions that it enter an order granting the Mosers' motion for leave to amend, and for other proceedings consistent with this opinion.

REVERSED AND REMANDED.